JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
Danielle Lynch Nicholson

**DEFENDANTS**
Tower Health
Reading Hospital

**(b)** County of Residence of First Listed Plaintiff  Chester County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Berks County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** ~~Attorneys~~ *(Firm Name, Address, and Telephone Number)*
Caren N. Gurmankin, Esq., Console Mattiacci Law,
1525 Locust Street, 9th Fl., Philadelphia, PA 19102, 215-545-7676

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☐ 1 U.S. Government
Plaintiff

☒ 3 Federal Question
*(U.S. Government Not a Party)*

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
*(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §2000e, et seq.
Brief description of cause:
Plaintiff was discriminated against because of her pregnancy.

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
DEMAND $ in excess of $75,000
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE  11/08/2022

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ West Chester, PA 19382 _____

Address of Defendant: _____ 420 S. Fifth Avenue West, Reading, PA 19611 _____

Place of Accident, Incident or Transaction: _____ 420 S. Fifth Avenue West, Reading, PA 19611 _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 11/08/2022 _____  *Attorney-at-Law / Pro Se Plaintiff* _____  205900 _____
                                                                            *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Caren N. Gurmankin _____, counsel of record *or* pro se plaintiff, do hereby certify:

- ☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- ☒ Relief other than monetary damages is sought.

DATE: 11/08/2022 _____  *Attorney-at-Law / Pro Se Plaintiff* _____  205900 _____
                                                                            *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Danielle Lynch Nicholson | : | CIVIL ACTION |
| | : | |
| v. | : | |
| Tower Health, et al. | : | |
| | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                                   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court.  (See reverse side of this form for a detailed explanation of special
management cases.)                                                                      ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.      ( X )

| | | |
|---|---|---|
| 11/8/2022 | _[signature]_ | Plaintiff, Danielle Lynch Nicholson |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-405-2900 | gurmankin@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| _____ | : | |
| **DANIELLE LYNCH NICHOLSON** | : | |
| **West Chester, PA 19382** | : | **CIVIL ACTION NO.** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **TOWER HEALTH** | : | **JURY TRIAL DEMANDED** |
| **420 S. Fifth Avenue West** | : | |
| **Reading, PA 19611** | : | |
| | : | |
| **and** | : | |
| | : | |
| **READING HOSPITAL** | : | |
| **420 S. Fifth Avenue West** | : | |
| **Reading, PA 19611** | : | |
| | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

## <u>COMPLAINT</u>

## I.    <u>INTRODUCTION</u>

Plaintiff, Danielle Lynch Nicholson, brings this action against her former
employer Tower Health and one of its subsidiaries, Reading Hospital ("Defendants").
Defendant terminated Plaintiff shortly after she advised that she was pregnant and failed
to place her into open positions for which she was qualified.  Defendants' unlawful
conduct towards Plaintiff violated Title VII of the Civil Rights Act of 1964, as amended,
42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Pennsylvania Human Relations Act, as
amended, 43 P.S. § 951, *et seq.* ("PHRA").

II.     **PARTIES**

1.      Plaintiff, Danielle Lynch Nicholson, is an individual and a citizen of the Commonwealth of Pennsylvania.  She resides in West Chester, PA 19382.

2.      Defendant, Tower Health, is an entity with a principal place of business at 420 S. Fifth Avenue West, Reading, PA 19611.

3.      Defendant, Reading Hospital, is an entity with a principal place of business at 420 S. Fifth Avenue, West Reading, PA 19611.

4.      The website for Defendant Tower Health states that it is a "strong, regional, integrated healthcare provider/payer system that offers leading-edge, compassionate healthcare and wellness services to a population of 2.5 million people."

5.      Plaintiff's email address during her employment with Defendant was danielle.lynch@towerhealth.org.

6.      Defendants are engaged in an industry affecting interstate commerce and regularly do business in the Commonwealth of Pennsylvania.

7.      At all times material hereto, Defendants employed more than fifteen (15) employees.

8.      At all times material hereto, Defendants acted by and through their authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

9.      At all times material hereto, Defendants acted as employers within the meaning of the statutes which form the basis of this matter.

10.     At all times material hereto, Plaintiff was an employee of Defendants within the meaning of the statutes which form the basis of this matter.

### III.    JURISDICTION AND VENUE

11.    The causes of action which form the basis of this matter arise under Title VII and the PHRA.

12.    The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. § 2000e-5 and 28 U.S.C. § 1331.

13.    The District Court has supplemental jurisdiction over Count II (PHRA) pursuant to 28 U.S.C. §1367.

14.    Venue is proper in the District Court under 28 U.S.C. §1391(b) and 42 U.S.C. §2000(e)-5(f).

15.    On or about March 17, 2021, Plaintiff filed a Complaint with the PHRC, complaining of acts of discrimination alleged herein.  Her Complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC").  Attached hereto, incorporated herein and marked as Exhibit "1" is a true and correct copy of the PHRC Complaint (with personal identifying information redacted).

16.    On or about August 16, 2022, the EEOC issued to Plaintiff a Dismissal and Notice of Rights for her PHRC Complaint.  Attached hereto, incorporated herein and marked as Exhibit "2" is a true and correct copy of that notice (with personal identifying information redacted).

17.    Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

### IV.    FACTUAL ALLEGATIONS

18.    Plaintiff commenced her employment with Defendant Tower Health on or about December 2, 2019.

3

19.     Plaintiff was hired into the position of Marketing Coordinator at Brandywine Hospital, which was part of Defendant Tower Health.  She held that position throughout her employment.

20.     As part of Plaintiff's job responsibilities, she was part of Defendant Tower Health's Social Media Team which consisted of Marketing employees from hospitals throughout the health system.

21.     Plaintiff consistently performed her job duties in a highly competent manner and received positive feedback regarding the same.

22.     As of the time that Defendant Tower Health terminated Plaintiff's employment, she reported directly to James Gechter, Web/Social Media Content Manager, and Mary Beth Lowery, Marketing Director.  Gechter reported to Kimberly Slattery, System Director, Web Services.  Lowery reported to Lisa Hess (female), Vice President, Marketing and Corporate Communications for Defendant Tower Health, and Claire Mooney, President and Chief Executive Officer, Brandywine Hospital.

23.     On or about January 11, 2021, Plaintiff learned that she was pregnant and due on September 14, 2021.

24.     Plaintiff advised Defendants, through a phone call with Gechter, of her pregnancy on or about January 14, 2021.

25.     During her call with Gechter, Plaintiff expressed concern about working in-person at the office, as there was then a surge of Covid-19 cases and her doctor had advised against her getting the Covid vaccine due to her pregnancy.  Plaintiff told Gechter that she knew that Lowery was pushing for employees to return to in-person work.

26.     Plaintiff also told Gechter that her due date was mid-September 2021.

27.     On or about January 19, 2021, Plaintiff also advised Lowery that she was pregnant and that, due to the same and her doctor's medical advice not to receive the vaccine and the then-current Covid-19 case surge, she was concerned about working in-person at the office.

28.     Plaintiff also expressed to Lowery that she had been waiting a long time to become a mother and how significant her pregnancy was to her. Plaintiff also told Lowery that she had been feeling more tired than usual due to her pregnancy.

29.     Lowery told Plaintiff that her pregnancy was bad timing.

30.     Lowery also asked Plaintiff how far along she was in her pregnancy and when her due date was. Plaintiff told her that her due date was in mid-September.

31.     Lowery told Plaintiff that it would be interesting to see what happened next. Lowery also said that she was not certain how Mooney would react if she heard that Plaintiff was pregnant.

32.     Following Plaintiff's conversation with Lowery, Plaintiff advised Gechter that she had told Lowery of her pregnancy. Plaintiff also told Gechter that she had a pregnancy-related doctor's appointment later that month for which she would need to take paid time off.

33.     On or about January 29, 2021, Plaintiff submitted a doctor's note requesting that she be permitted to work from home as an accommodation for her pregnancy.

34.     Plaintiff subsequently advised Lowery of her doctor's note and accommodation request.

35.     Lowery asked Plaintiff if she needed to work from home during the entirety of her pregnancy or whether she would be able to re-evaluate her accommodation request at her next doctor's appointment.

36.     Lowery also asked Plaintiff when she planned to get the Covid vaccine.

37.     Plaintiff told Lowery that she would follow her doctor's recommendations and medical advice.  Plaintiff also told Lowery that her doctor recommended that she wait until her second trimester to get the vaccine.

38.     Lowery told Plaintiff that it was hard for her to plan when she did not have a lot of information from Plaintiff.

39.     Defendants approved Plaintiff's request to work from home due to her pregnancy.

40.     Shortly thereafter, Gechter asked Plaintiff if Defendant had approved her accommodation request.  Plaintiff confirmed that her request had been approved.

41.     After Plaintiff informed Defendants of her pregnancy and after she submitted a request for an accommodation in connection with the same, Defendants treated her worse than she had prior to her pregnancy, as set forth herein.

42.     After Plaintiff advised of her pregnancy, Lowery and Gechter did not assign Plaintiff as many new projects/tasks as they had previously.

43.     After Plaintiff advised of her pregnancy, Lowery and Gechter removed certain job duties and responsibilities from Plaintiff.

44.     After Plaintiff advised of her pregnancy, Lowery reduced her communications with Plaintiff.

45.     After Plaintiff advised of her pregnancy, Lowery ignored Plaintiff's

6

requests for additional work.

46.     After Plaintiff advised of her pregnancy, Lowery excluded Plaintiff from certain communications related to Plaintiff's job responsibilities and did not provide Plaintiff with certain information that Plaintiff needed to perform her job.

47.     After Plaintiff advised of her pregnancy, Lowery excluded Plaintiff from projects for which she had previously asked for Plaintiff's assistance.

48.     On or about February 13, 2021, Plaintiff applied for a Marketing Specialist position at Defendant Reading Hospital.

49.     Defendant Reading Hospital was part of Defendant Tower Health.

50.     Plaintiff was qualified for the position of Marketing Specialist at Defendant Reading Hospital.

51.     On or about February 15, 2021, Gechter advised that Defendants had hired another Marketing Coordinator at Defendant Reading Hospital.

52.     Gechter said that the new Marketing Coordinator would be assigned one of Plaintiff's job responsibilities.

53.     That job responsibility that Defendants removed from Plaintiff and assigned to the new Marketing Coordinator was a significant part of Plaintiff's job.

54.     On or about February 17, 2021, Defendants informed Plaintiff that her employment was terminated, effective immediately.

55.     Plaintiff was told that her employment was being terminated because her position was being eliminated.  Plaintiff was also told that her termination was not a result of poor performance.

56.     Plaintiff was the only employee who reported to Lowery and Gechter who

was terminated effective February 17, 2021.

57.     Defendants did not offer Plaintiff any opportunity to remain employed at that time.

58.     There were open positions for which Plaintiff was qualified as of the time of her termination.

59.     On or about February 22, 2021, Plaintiff interviewed with Chrystal Schardt, Interim Marketing Director at Defendant Reading Hospital, for the Marketing Specialist position for which she had previously applied.

60.     On or about February 24, 2021, Defendant advised Plaintiff that she had not been selected for the Marketing Specialist position at Reading Hospital.

61.     Defendant did not provide Plaintiff with a reason as to why she was not selected for the Marketing Specialist position.

62.     On or about March 1, 2021, Plaintiff interviewed for an open Corporate Communications Manager at Reading Hospital.

63.     Plaintiff was qualified for the position of Corporate Communications Manager.

64.     Defendants did not hire Plaintiff for the position of Corporate Communications Manager.

65.     In around late March 2021, Defendants advised Plaintiff that it put the Corporate Communications Manager position on hold while it evaluated positions and that it would get in touch with her if it were re-opened.

66.     No one at Defendants got back to Plaintiff about the Corporate Communications Manager position or any other open position at Defendants.

67.     Plaintiff's pregnancy was a motivating and/or determinative factor in Defendants' discriminatory treatment of Plaintiff, including terminating her employment, failing to place her into the Marketing Specialist position, and failing to place her into the Corporate Communications Manager position.

68.     Defendants failed to prevent or address the discriminatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory conduct.

69.     As a direct and proximate result of the discriminatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

70.     The conduct of Defendant, as set forth above, was outrageous under the circumstances and warrants the imposition of punitive damages against Defendant.

## COUNT I – Title VII

71.     Plaintiff incorporates herein by reference paragraphs 1 through 70 above, as if set forth herein in their entirety.

72.     By committing the foregoing acts of discrimination against Plaintiff, Defendants have violated Title VII.

73.     Defendant acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and its conduct warrants the imposition of punitive damages.

9

74.     As a direct and proximate result of Defendants' violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorney's fees and costs.

75.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory acts unless and until this Court grants the relief requested herein.

76.     No previous application has been made for the relief requested herein.

## COUNT II – PHRA

77.     Plaintiff incorporates herein by reference paragraphs 1 through 76 above, as if set forth herein in their entirety.

78.     Defendants, by the above improper and discriminatory acts, have violated the PHRA.

79.     Said violations were intentional and willful.

80.     As a direct and proximate result of Defendants' violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorney's fees and costs.

81.     Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendants' discriminatory acts unless and until the Court grants the relief requested herein.

82.     No previous application has been made for the relief requested herein.

### RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a)     declaring the acts and practices complained of herein to be in violation of Title VII;

(b)     declaring the acts and practices complained of herein to be in violation of the PHRA;

(c)     enjoining and permanently restraining the violations alleged herein;

(d)     entering judgment against the Defendants and in favor of the Plaintiff in an amount to be determined;

(e)     awarding compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

(f)     awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

(g)     awarding punitive damages to Plaintiff under Title VII;

(h)     awarding Plaintiff such other damages as are appropriate under Title VII and the PHRA;

(i)      awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorney's fees; and,

(j)      granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE MATTIACCI LAW, LLC**

Dated: November 8, 2022          BY:    /s/ Caren N. Gurmankin
                                                         Caren N. Gurmankin, Esq.
                                                         1525 Locust St., 9th Floor
                                                         Philadelphia, PA 19102
                                                         (215) 545-7676

                                                         Attorney for Plaintiff,
                                                         Danielle Lynch Nicholson

# Exhibit 1

Received

MAR 17 2021

PA Human Relations Commission
Philadelphia Regional Office

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## COMPLAINT

COMPLAINANT:

**DANIELLE LYNCH NICHOLSON**

v.

RESPONDENTS:

**TOWER HEALTH**

and

**BRANDYWINE HOSPITAL**

Docket No. 202002288

1. The Complainant herein is:

   Name:        Danielle Lynch Nicholson

   Address:     redacted
                West Chester, PA 19382

1. The Respondents herein are:

   Names:       Tower Health; Brandywine Hospital

   Address:     201 Reeceville Road
                Coatesville, PA 19320

2. I, Danielle Lynch Nicholson, the Complainant herein, allege that I was subjected to unlawful discrimination because of my sex (female) and pregnancy, as set forth below.



<u>**Discrimination**</u>

    A.  **I specifically allege:**

      [1]      I began working at Respondents on or about December 2, 2019.

      [2]      I last held the position of Marketing Coordinator.

      [3]      I consistently performed my job duties in a highly competent manner and received positive feedback.

      [4]      I last reported to James Gechter (male), Web/Social Media Content Manager, and Mary Beth Lowery (female), Marketing Director.  Gechter reported to Kimberly Slattery (female), System Director, Web Services.  Lowery reported to Lisa Hess (female), Vice President, Marketing and Corporate Communications for Tower Health, and Claire Mooney (female), President and Chief Executive Officer, Brandywine Hospital.

      [5]      On or about December 2, 2019, I began reporting to Lowery.

      [6]      On August 12, 2020, I received an Exceeds Standards performance review rating.

      [7]      On October 25, 2020, I began reporting to Gechter in addition to Lowery.

      [8]      On January 3, 2021, I received a salary increase and positive performance feedback.

      [9]      On January 11, 2021, I learned that I was pregnant and due on September 14, 2021.

      [10]      On January 14, 2021, in a phone call with Gechter, I informed him that I was pregnant.  I told him that, due to my pregnancy, I was concerned about working in person at Respondents, as I was aware that Lowery wanted employees to begin working at the office in person instead of from home, and COVID-19 cases were at an all-time high at Respondents.  I

told Gechter that, due to my pregnancy, I canceled my January 14, 2021 COVID-19 vaccination appointment after speaking with my doctor.

[11]    On January 19, 2021, in a phone call with Lowery, I informed her that I was pregnant. I told her that, due to my pregnancy, I was concerned about working in person at Respondents, as I was aware that she wanted employees to begin working at the office in person instead of from home, and COVID-19 cases were at an all-time high at Respondents. I told Lowery that, due to my pregnancy, I canceled my January 14, 2021 COVID-19 vaccination appointment after speaking with my doctor. I stated that I had been waiting my entire life to be a mother. I told Lowery that I had informed Gechter of my pregnancy. I told Lowery that I had a doctor's appointment on January 29, 2021. Lowery asked how far along I was in the pregnancy, and asked when my due date was. I told her that I was due in September 2021. Lowery indicated to me that my pregnancy was bad timing. Lowery told me that it would be interesting to see what happened next. Lowery said that she was not certain how Mooney would react if she heard that I was pregnant.

[12]    On January 19, 2021, following the above, in a phone call with Gechter, I informed him that I notified Lowery of my pregnancy and my upcoming January 29, 2021 doctor's appointment.

[13]    On January 29, 2021, I took paid time off for a doctor's appointment related to my pregnancy.

[14]    On January 29, 2021, in an email to Maura Rinehart (female), Employee Health Nurse, copying Gechter, I submitted a doctor's note and requested to work from home, as an accommodation for my pregnancy, due to COVID-19.

[15]     On February 2, 2021, in a phone call with Lowery, she asked how my doctor's appointment went on January 29, 2021. I told her that my doctor recommended that I work from home, as an accommodation for my pregnancy, due to COVID-19; and that I had submitted a doctor's note and accommodation request to Rinehart. Lowery asked if I would be working from home for the entirety of my pregnancy or whether I would reevaluate when I saw my doctor again. I told her that I would follow my doctor's recommendations. Lowery asked when I would get the COVID-19 vaccine. I told her that my doctor recommended that I wait until at least my second trimester to get the vaccine, as there had been no studies to date showing the vaccine's impacts on pregnant women and their babies. Lowery stated it was hard for her to plan when she did not have a lot of information.

[16]     On February 5, 2021, in an email from Rinehart, copying Kimberly Holbrook (female), Human Resources Benefits and Compensation Manager, she approved my accommodation request to work from home due to my pregnancy.

[17]     On February 8, 2021, I took paid time off for a doctor's appointment related to my pregnancy.

[18]     On February 12, 2021, Gechter asked me if Rinehart had approved my accommodation request. I stated that she had, and forwarded him Rinehart's February 5, 2021 email.

[19]     After I informed Gechter and Lowery of my pregnancy, I was treated differently and worse, and in a more dismissive manner, than I was treated before I disclosed my pregnancy and than male and/or non-pregnant female employees and/or employees who were not anticipating taking maternity leave were treated.

[20]     Lowery and Gechter gave me fewer new assignments.

[21]      Lowery and Gechter removed certain job duties and responsibilities from me.

[22]      Lowery ignored me and stopped calling me on a daily basis.

[23]      Lowery stopped giving me additional work, even when I repeatedly expressed that I was able to take on more work.

[24]      Lowery excluded me from certain communications related to my job duties and responsibilities.

[25]      On February 13, 2021, I applied for a posted Marketing Specialist position. I was qualified for the position. I applied for the position because of the dismissive manner in which I was being treated after announcing my pregnancy.

[26]      On February 15, 2021, in a team meeting led by Gechter, he stated that the three (3) person social media team, of which I was a part, would be expanding to four (4) people. He announced that Emily Manwiller Fisher, who had previously worked at Respondents, would join the team as a Marketing Coordinator. Gechter stated that Fisher would be taking over the monitoring of certain social media accounts, which had been part of my job responsibilities since November 2020. He stated that he would be working with the Marketing Directors to help them with any social media questions they had and get them up to speed on things. The social media duties to which Gechter was referring had been part of my job responsibilities.

[27]      On February 17, 2021, I received a phone call from Gechter, Lowery, and Erin Shultz (female), Human Resources Business Partner, informing me that my employment was terminated, effective immediately. The stated reason was position elimination. I was told that my termination was not a result of poor performance.

[28]     Respondents terminated my employment because of my sex and/or pregnancy and/or anticipated maternity leave and/or seeking pregnancy-related accommodations.

[29]     Before I informed Respondents of my pregnancy and sought pregnancy-related accommodations, I had no indication that my job was in jeopardy.

[30]     I had no disciplinary or performance issues throughout my employment.

[31]     I was the only employee reporting to Gechter and Lowery who was terminated effective February 17, 2021.

[32]     I had no opportunity to remain employed with Respondents.

[33]     There were open positions under Gechter and in other sections of Respondents' Marketing and Communications Team for which I was qualified. I was not placed into or offered any open positions in lieu of termination.

[34]     Respondents assigned a portion of my job duties and responsibilities to Fisher. I was more qualified to perform my job duties and responsibilities than the nonpregnant employee who was not anticipating taking maternity leave to whom a portion of my job duties and responsibilities were assigned.

[35]     On February 22, 2021, I interviewed with Chrystal Schardt (female) Interim Marketing Director, for the posted Marketing Specialist position for which I had applied.

[36]     On February 23, 2021, in an email to Schardt, I thanked her for interviewing me and reiterated my interest in the Marketing Specialist position.

[37]     On February 23, 2021, in an email to Ellyn Stabile (female), Recruiter, Human Resources, I stated that I enjoyed my interview and reiterated my interest in the Marketing Specialist position.

[38]     On February 24, 2021, in a phone call with Stabile, Respondents failed to hire me for the Marketing Specialist position for which I was qualified. She told me that Respondents were not going to move forward with me as a candidate for the Marketing Specialist position but that there was an open Corporate Communications Manager position that had not yet been posted that I could interview for. I was qualified for the position.

[39]     I received no explanation, including the selection criteria, as to why I was not selected for the Marketing Specialist position.

[40]     Respondents failed to hire me for the Marketing Specialist position for which I was qualified because of my sex and/or pregnancy and/or anticipated maternity leave and/or seeking pregnancy-related accommodations.

[41]     On March 1, 2021, I interviewed with Richard Wells (male), System Director, Corporate Communications and Government Relations, for the open Corporate Communications Manager.

[42]     On March 2, 2021, in an email to Wells, I thanked him for interviewing me and reiterated my interest in the Corporate Communications Manager position.

[43]     I have not received any further communication from Respondents.

[44]     Respondents failed to hire me for the Corporate Communications Manager position for which I was qualified because of my sex and/or pregnancy and/or anticipated maternity leave and/or seeking pregnancy-related accommodations.

[45]     Respondents subjected me to a hostile work environment because of my sex and/or pregnancy and/or anticipated maternity leave and/or pregnancy-related accommodations.

[46]    Respondents' sex and pregnancy discriminatory conduct toward me has caused me emotional distress.

[47]    Respondents' comments and conduct evidence a bias against female and/or pregnant employees and/or employees who are anticipating taking maternity leave.

B.    Based on the aforementioned, I allege that Respondents have discriminated against me because of my sex (female) and pregnancy, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, et seq. ("PHRA").

3.    The allegations in Paragraph 3 hereof constitute unlawful discriminatory and retaliatory practices in violation of:

__X__    Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s): __(a)__

_____    Section 5.1 Subsection(s) _____

_____    Section 5.2 Subsection(s) _____

_____    Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) _____

4.    Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

__X__    This charge will be referred to the EEOC for the purpose of dual filing.

5.    The Complainant seeks that Respondents be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

(c) Remedy the discriminatory and retaliatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

3/16/21
(Date Signed)

*Danielle Lynch Nicholson* (Signature)

Danielle Lynch Nicholson
redacted
West Chester, PA 19382

# Exhibit 2



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Philadelphia District Office
801 Market Street, Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

**To:** Danielle Nicholson
redacted
West Chester, PA 19382

Charge No: 17F-2021-61214

EEOC Representative and email: Damon A. Johnson
           State, Local and Tribal Program Manager
           Damon.Johnson@eeoc.gov

### DISMISSAL OF CHARGE

The EEOC is closing this charge because: The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

Please retain this notice for your records.

On behalf of the Commission,

Digitally Signed By: Karen McDonough
08/16/2022
Karen McDonough
Deputy District Director

**cc:**

For Charging Party:

Emily R. Derstine Friesen, Esq.
Console Mattiacci Law
1525 Locust Street, 9th Floor
Philadelphia, PA 19102

For Respondent:

Vincent Candiello, Esq.
Cozen O'Connor
17 North Second Street, Suite 1410
Harrisburg, PA  17101